INHABITANTS OF HAMPDEN *vs.* INHABITANTS OF TROY.

Penobscot.   Opinion February 27, 1880.

*Pauper.   Emancipation.*

A legitimate minor child, whose father had no settlement in this state at the time of his decease, follows the settlement of his mother and is not emancipated by her second marriage.

ON MOTION AND EXCEPTIONS.

ASSUMPSIT to recover $250.29, for pauper supplies furnished Eliphaz Keizer, a pauper.   No question was made in relation to the supplies or legal notice and denial.

It was admitted that David Keizer, father of the pauper, never had had any settlement in this state when he died; that the pauper was born January 10, 1822; that Charles Pratt had a settlement in Palermo before he went to Troy and was married to Polly Keizer, mother of the pauper, January 29, 1839, and went to live with her in Troy where she had a small house and twelve acres of land; that the pauper received pauper supplies from Troy in 1845 while he was living at his uncle's in Troy, and that he never gained a settlement in his own right.

The main question was whether or not the pauper was emancipated.

Upon the subject of emancipation the presiding justice instructed the jury as follows:

"A child takes the settlement of its parent until emancipated. The law emancipates that child at the age of twenty-one years, ordinarily, but not always.   A child may be more than twenty-one and not become emancipated, or it may be less than twenty-

one, and be emancipated; the twenty-one years are a general legal test—not conclusive either way. A child may not become emancipated from its parent till long after, as, for instance when the child is *non compos mentis,* and not able to take care of itself. It continues unemancipated as long as it is under his care and control, receiving support from him; and it follows his settlement as long as such condition exists, no matter how long it is after such person arrives at full age. . . On the other hand a child may be emancipated before it becomes twenty-one. It may be done by contract between father and son, or a widow and her son. One instance would be where marriage is contracted with the consent of father or mother. A daughter under age is married with the consent of her father. That consent is a contract that she shall be free from his control, and be controlled by somebody else. Another case is when the father deliberately gives him his own earnings; the same relations then exist as when the boy is twenty-one. Such a contract may be an express contract or one proved by circumstances. It is not presumed, but it may be proved and inferred from facts and circumstances, if the facts and circumstances are sufficient in the minds of the jury to warrant the conclusion. And emancipation may be produced otherwise than by contract; and emancipation has the same relation or condition, however produced. Emancipation is the same thing, when existing, whether it is brought about by contract or in any other way. . . If a parent forces a child to leave his house, or deserts or abandons him, the child is released from all filial duties which the law will enforce; and if he accepts the situation, and seeks his own living in his own way, he is to be regarded as emancipated; the tie between the parent and child is broken, not necessarily because all affection between them is gone; that may still exist in smaller or larger degree, or not at all. . . As I understand the defendants, the first claim is that the marriage itself, between the mother of Eliphaz Keizer and Charles Pratt, emancipated the minor boy. I do not give you that instruction. I rule that it is not so.

"Then the defendants claim that, if the pauper was supported by the town while a minor, after its mother's intermarriage with

Pratt, with the knowledge of the mother and her husband, and such support was in good faith, furnished to relieve want and distress, such act would break the continuity of residence, either affecting the settlement of the father or the mother, or both of them, or directly affecting the settlement of the son, Eliphaz, irrespective of the father. That is, they say, if otherwise, they were put into a position of necessity to support the child—and still the child was gaining a residence in their town in spite of that support. I instruct you that the settlement of the minor would not be affected by this circumstance, unless there was emancipation in fact. The mother could emancipate her minor son. The mother had the power to emancipate her minor son, and this could take place in either one of two ways, if borne out by the testimony. First, it could be by contract, and that contract could be expressly proved, by a writing or newspaper notice; or it could be inferentially proved by facts and circumstances, if they are sufficient therefor.

"If you are satisfied that there was a mutual understanding and agreement between the mother and the minor, that he should have his own time, enjoy his own earnings and control his own actions, and that they acted upon such understanding and agreement, that would be emancipation—one mode of emancipation. It could also take place by necessity or abandonment. I give this instruction or rule: If you are satisfied that Charles Pratt and his wife neglected to support the minor, and ceased to exercise over him parental control, turning him out upon the world to take care of himself; and he ceased to be under their control, and acted for himself independently of them, such a condition of things would amount to emancipation by abandonment. And I further rule that the effect is the same whether such a state of things were brought about willingly by the mother, or whether she did it, if she did it, through the influence or compulsion of her husband. That is, the motive is immaterial; but the motive to do it or not to do it, may have a bearing upon the question as to whether, or not, she did it."

The jury found for plaintiffs and the defendants alleged exceptions.

*L. Barker*, *T. W. Vose* and *L. A. Barker*, for the plaintiffs.

*William McCrillis & W. H. McLellan*, for the defendants.

At the common law, the minor child of a widow who married again did not take the step-father's settlement. This was changed by Stat. 1821, c. 122, § 2. *Plymouth* v. *Freetown*, 1 Pick. 198. *Parsonsfield* v. *Kennebunkport*, 4 Maine, 47. *Dennysville* v. *Trescott*, 30 Maine, 470. *Great Barrington* v. *Tyringham*, 18 Pick. 264. *Goshen* v. *Richmond*, 4 Allen, 461.

This statute has been repeatedly re-enacted, thereby adopting this construction. 48 Maine, 410.

A step-father need not, but may, stand *in loco parentis*. *Storer* v. *Com.* 3 Esp. 1. If he does he assumes the same obligation that he is under to his own child.

It is customary for wife's children to be received as members of step-father's family. *Mulhorn* v. *McDavitt*, 16 Gray, 405. *Bush* v. *Blanchard*, 18 Ill. 46. *Mowbray* v. *Mowbray*, 62 Ill. 385. *Gorman* v. *State*, 42 Tex. 221. *St. Ferd. L. Acad.* v. *Bobb*, 52 Mo. 357. *In re Goodenough*, 19 Wis. 274. *Williamson* v. *Hutchinson*, 3 Comst. 312.

The pauper, in 1840, received supplies from Troy. If he was not then a member of his step-father's family, then, the pauper was emancipated; and thus the step-father had resided in Troy only three years before emancipation. If he was a member, then the supplies were indirect pauper supplies to the step-father and interrupted his residence.

The pauper was emancipated. *Monroe* v. *Jackson*, 55 Maine, 59. The mother's conduct in relation to her duties toward him was inconsistent with any further performance of them. A voluntary act of the parent may emancipate. *Lowell* v. *Newport*, 66 Maine, 78. It must be inconsistent with further performance of parental duties. The will is immaterial. If a parent do a voluntary act inconsistent with the further performance of parental duties towards his child, such an act gives rise to the duty of the parent to emancipate the child, and the law proceeds as if the parent had performed that duty—implies the parent's consent to emancipation.

If a father turns his minor son out upon the world to gain his

own livelihood, it is the duty of the father to emancipate the son, and the law proceeds as if he had—implies the consent.

The question is the mother's right to custody and earnings of her child after her second marriage.

The marriage of the mother was an absolute gift to the husband of the goods, chattels and personal estate actually or beneficially possessed or which might come to her during the coverture. 8 Mass. 99. 13 Mass. 384. 17 Maine, 29. *Prescott* v. *Brown*, 23 Maine, 305.

The mother could not be the natural guardian after her marriage. R. S., c. 67, § 3.

If the pauper, after mother's marriage, resided in step-father's family, the latter was entitled to the former's earnings. Step-father could not compel such residence, or continue it, but might terminate it. *Freto* v. *Brown*, 4 Mass. 672. 6 Mass. 273, 675. *Worcester* v. *Marchant*, 14 Pick. 510. 5 Barb. 122. 16 Gray, *supra.*

Neither in 1840, while the pauper was at work in Massachusetts, nor in the fall of 1840, when the pauper was sick and supported by Troy; nor in 1841, after the separation of Pratt and his wife, was the pauper a member of his step-father's family— each respectively sustaining the relation to the other of father and minor child.

By the voluntary act of marriage with Charles Pratt, the mother had no longer any control of her own actions, and she had made it impossible to discharge any parental duties toward her children, and she was no longer entitled to the services of the pauper, and it was her duty to emancipate the pauper. The pauper was not a member of his step-father's family in 1840, nor 1841, nor did the step-father perform any of the obligations of father toward him. It was the duty of the step-father to consent to the mother's emancipation of the pauper, and the emancipation of the pauper by the mother, with the consent of the step-father, was implied. *St. George* v. *Deer Isle*, 3 Maine, 390, is directly in point.

In the case at bar, the mother of the pauper had no legal right to the service of her minor son, nor control of his person; nor

had the step-father, Charles Pratt, unless the pauper was living in his family. *Monroe* v. *Jackson, supra.*

VIRGIN, J. The father of the pauper whose settlement is in controversy, died, some years prior to 1839, in the defendant town without having gained any settlement in this state.

The pauper, Eliphaz Keizer, was born January 10, 1822, and resided with his mother, Polly Keizer, on a small place owned by her, in the defendant town, where she had her settlement until January 29, 1839, when she was married to one Pratt whose settlement was then in Palermo ; and thereupon, Pratt went to live with his wife, upon her place, and continued to reside there for several years—the precise length of his residence there being one of the facts in dispute.

The plaintiffs contended, and the jury, by a special verdict, found that, Pratt gained a new settlement in the defendant town by having his home there five successive years, at least, prior to January 9, 1843, (when the pauper became of age) without receiving, directly or indirectly, supplies as a pauper.

In December, 1840, more than two years before the pauper attained his majority, he fell sick and went to his uncle's, in Troy, where he was furnished certain supplies by that town.

The defendants contended : (1) That if the pauper, when he received the supplies, was not a member of his step-father's (Pratt's) family, then he was emancipated, and could no longer follow any new settlement which his mother might acquire by her husband's continuous residence in Troy ; and (2) But if he was a member of his step-father's family, then the supplies were indirect supplies to the step-father, and that therefore the step-father had no home in Troy for five successive years before the pauper became of age without indirectly receiving supplies as a pauper.

The jury, by a special verdict, found that the pauper was not emancipated by his mother after her marriage to Pratt ; and the presiding justice instructed the jury that the marriage itself did not emancipate the pauper, and that the settlement of the pauper was not affected by his receipt of the supplies.

The defendant's counsel admit in their argument that the pauper was not a member of Pratt's family in the fall of 1840 when

he was sick and supported by Troy, and that Pratt performed none of the obligations of a father towards him. This admission acknowledges the soundness of the instruction that the settlement of the pauper was not affected by the supplies furnished by the defendants in 1840 ; for never having assumed the care and support of the pauper, he did not stand *in loco parentis*. *Freto* v. *Brown*, 4 Mass. 675. *Comm.* v. *Hamilton*, 6 Mass. 273, 275. *Worcester* v. *Marchant*, 14 Pick. 510. *Mulhern* v. *McDavitt*, 16 Gray, 405. And not being bound to support, the supplies furnished to the pauper, while he was sick at his uncle's, were not indirect pauper supplies to Pratt. *Greene* v. *Buckfield*, 3 Maine, 136. *Dixmont* v. *Biddeford*, 3 Maine, 205. *Hallowell* v. *Saco*, 5 Maine, 143. *Raymond* v. *Harrison*, 11 Maine, 190.

The only remaining question raised by the defendants, at the argument, is—Did the marriage of Polly Keizer to Pratt, *per se,* emancipate her son Eliphaz.

The statute which governs this point provided :

(1)  A married woman shall always follow and have the settlement of her husband, if he have any within this state.

(2)  Legitimate children shall follow and have the settlement of their father, if he have any within this state, until they gain a settlement of their own ; but if he have none, they shall in like manner follow and have the settlement of their mother, if she have any.   R. S., 1840, c. 32, § 1.

It was early contended that, the first clause of the second provision above quoted, literally construed, gave a son a settlement acquired by his father at any period of the son's life, even after the latter had attained his majority, left his father, married a wife and become the father of a family of his own—provided that the son had not gained a settlement of his own. But the court said that while the language admitted such a construction, such could not have been the intention of the legislature ; that "wives and children may have derivative settlements, because the husband and the father have the legal control of their persons and the right to their services ; the wife cannot be separated from the husband, or minor children from the father ; but when the father ceases to have any control over his children or any right to their service, it

is not easy to devise any good reason why they should not be considered as emancipated, and as no longer having a derivative settlement with the father on his acquiring a new settlement. And when the reason ceases, the law founded on that reason ceases. That upon the father's gaining a new settlement, a child of full age, although voluntarily living with him, does not have the new settlement with his father, but his former settlement remains." *Springfield* v. *Wilbraham*, 4 Mass. 493. This case was cited by this court in deciding a similar case. *Hampden* v. *Brewer*, 24 Maine, 281.

As an illustration of this principle it has been held that where a minor daughter became lawfully married, she thereby went out of the control of her parents and was emancipated, and hence could no longer follow their settlement subsequently acquired. *Charlestown* v. *Boston*, 13 Mass. 472. "This is analogous," said the court, "to the doctrine of emancipation in the English books, and according to the principles settled in *Springfield* v. *Wilbraham ;* and her continuing to reside in the house of her mother does not affect the case, for this must have been voluntary on her part and with the consent of her husband ; and the mother no longer retained any control over the person, or any right to the services of the daughter. . . Children are no longer children so as to take a new settlement acquired by their parents when capable of gaining one for themselves, if they are separated from their parents by marriage or other legal emancipation." This case is followed by *Shirley* v. *Lancaster*, 6 Allen, 31, and the reasoning in *Springfield* v. *Wilbraham*, approved.

But the original doctrine of emancipation founded upon majority is not universally applied ; for a person who has become twenty-one years of age is not thereby emancipated when, by reason of mental imbecility, he is compelled still to remain dependent upon his parents for guidance and support. *Upton* v. *Northbridge,* 15 Mass. 237. *Wiscasset* v. *Waldoborough*, 3 Maine, 388. *Monroe* v. *Jackson*, 55 Maine, 55 and cases.

When, in 1822, the second clause of the second provision hereinbefore recited came up for construction, the court decided that legitimate children, under age, having the settlement of their

mother, follow a new settlement acquired by the mother although it be derived by a subsequent marriage. *Plymouth* v. *Freetown,* 1 Pick. 197. In 1826, the same question came before this court in *Parsonsfield* v. *Kennebunkport,* 4 Maine, 47. Counsel for the defendant town in that case contended that the statute should not be construed literally, but that the principles enunciated in *Springfield* v. *Wilbraham,* should be applied, and that the provision did not apply to a settlement of the mother derived by marriage, but to one acquired in some way consistent with her right to control the persons of her minor children. But the court followed *Plymouth* v. *Freetown,* and denied the application of *Springfield* v. *Wilbraham,* although they declined to decide whether the marriage of the mother *ipso facto* emancipated her minor children.

Again the question arose and was decided the same way in *Great Barrington* v. *Tyringham,* 18 Pick. 264. In that case the minor had the settlement of his mother in another state where he was learning a trade. It was held that he followed the new settlement of his mother acquired by a second marriage in Massachusetts, although he never resided there. Bishop, for the defendants, contended that the pauper did not follow the settlement acquired by her subsequent marriage, "inasmuch as his mother was absolved from all obligations to support him by the marriage," and cited *Springfield* v. *Wilbraham.* But Shaw, C. J., while he approved of the "limitations of the generality of the words of the statute," as decided in *Springfield* v. *Wilbraham,* said this case was not "within the principle of *Springfield* v. *Wilbraham.*"

We know of no case in this state or in Massachusetts which decides that the marriage of the mother is the emancipation of her minor child by a former marriage. But there are several wherein it is held that the marriage of a mother does not emancipate her illegitimate child. *Fayette* v. *Leeds,* 10 Maine, 409. Sprague, counsel for the plaintiffs, argued that the same reasons assigned for the contrary doctrine "would apply to the case of a widow with children by a former husband, in which case no one would contend that on the second marriage they thereby became entirely emancipated."

So where a minor child is separated from his parents by being bound to service until twenty-one years of age by the overseers of the town wherein he has his settlement, he is not thereby emancipated although the parental and filial relations are suspended permanently. *Sanford* v. *Lebanon*, 31 Maine, 128. *Oldtown* v. *Falmouth*, 40 Maine, 106.

If the marriage of the mother, *ipso facto*, emancipated her child, then the receiving of the child into the step-father's family would not affect the emancipation, any more than the continuance of a child to reside with his father after his majority; or a married minor daughter continuing to reside with her mother. *Charlestown* v. *Boston*, 13 Mass. 469. This proposition would militate with well settled principles concerning the relation between step-father and step-son when the latter is received into the former's family.

Moreover this precise question has been decided by this court and is *res adjudicata.* In *Dennysville* v. *Trescott*, 30 Maine, 470, the court say : "The parental relation subsisting between her (the mother) and her children is not entirely changed by the second marriage. Why should the law require in a case like this that the children should follow the mother's settlement, unless she had some duties to discharge in relation to them and that it would be an act of inhumanity to separate them ? . . They cluster around her and the law presumes she will not be unmindful of their welfare."

We cannot say that the verdict is against the weight of evidence so as to warrant us in setting it aside.

*Motion and exceptions overruled.*

APPLETON, C. J., BARROWS, DANFORTH, PETERS and SYMONDS, JJ., concurred.